In re CONTEMPT OF Court Attorney
Christopher P. CULLEN,
Appellant.

Superior Court of Pennsylvania.

Argued Jan. 14, 2004.
Filed April 6, 2004.
Reargument Denied June 11, 2004.

David J. Rinaldi, Scranton, for appellant.

Before: STEVENS, PANELLA, and OLSZEWSKI, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Christopher P. Cullen, Esquire, appeals from the order entered on August 27, 2002 in the Court of Common Pleas of Lackawanna County. We affirm.

¶ 2 The lower court, the Honorable Michael Jude Barrasse, provided the background of this case as follows:

This matter started by the request of the contemnor, Attorney Christopher Cullen ("Cullen"), for a Rule to Show Cause pursuant to Local Rules. Lackawanna County Rules of Court § 205 and 206. These Rules allow counsel, without notice to opposing counsel, to secure a hearing date at a future time for the relief sought. Upon [the] court granting said Rule to Show Cause and service upon all parties, Attorney Joseph O'Brien, counsel for a non-party in the original suit, wrote to [the] court and contemnor objecting to the inclusion of the Lackawanna County Rail Authority ("Authority") as a party in the original action.

Attorney Joseph O'Brien advised the court that the Authority was not a party in the Sweeney matter and Cullen had not followed the proper procedure to present the Petition to Enforce Judgment upon the Authority. The court, due to vacation schedules and the summer season[,] changed its schedule to allow the litigants an earlier date then [sic] was originally given on the contemnor's Rule to Show Cause. Both counsel were notified and appeared at the Argument on July 31, 2002. At the conclusion of that hearing, the court held the record open for twenty-four hours to allow Cullen, who was without legal precedent, to present authority that supported the plaintiff's position. On August 1, 2002, the court reviewed the plaintiff's brief and then vacated the Rule to Show Cause presented on July 24, 2002.

On August 13, 2002, the court received a notice from The Pennsylvania Superior Court that the contemnor had filed an appeal regarding the court's decision of August 1, 2002.[The] court received a letter from Cullen dated August 8, 2002, requesting an Opinion on the court's decision. [The] court then scheduled a hearing for transmittal of the record in the Sweeney matter pursuant to Pennsylvania Rules of Appellate Procedure 1924, 1925, 1926 and 1931. The court then informed its personnel to contact

both parties and arrange a hearing for the following week. The court's personnel spoke via telephone to both parties, Cullen and O'Brien, and set August 27, 2002, at 9:00 a.m. as the date for the hearing. Two days later, the court received a letter from Cullen that was dated August 22, 2002. In that letter, Cullen alleged that the court was conducting "ex parte" conversations with Attorney O'Brien and that he did not believe that a phone call from the judge's law clerk was proper notice and as such he would not be attending the hearing on August 27, 2002. Cullen also advised the court that he was directed by his client not to attend the hearing on August 27, 2002. The Authority filed a Motion to Quash the appeal in the Sweeney matter, which was granted by the Pennsylvania Superior Court on October 4, 2002.

On Saturday[,] August 24, 2002, the court prepared a letter to Cullen that was hand delivered to Cullen on Monday[,] August 26, 2002, by the Lackawanna County Sheriff's Department. In the letter, the court advised Cullen that a hearing would be held on August 27, 2002 at 9:00 a.m. for the purposes of transmittal of the record to the Pennsylvania Superior Court and that if he chose not to attend the hearing, the court would convene a contempt of court hearing against Cullen immediately following the hearing.

On the day of the hearing, Cullen did not appear. However, Cullen had counsel, Attorney David Rinaldi ("Rinaldi"), appear at the court's chambers to inquire into the court's intent on the contempt issue, not to represent the client in the litigation. The court informed Rinaldi that the hearing would be held to perfect the record and that if Cullen failed to appear, a contempt hearing would be held immediately after the scheduled hearing. Attorney Rinaldi in-

formed the court that Cullen would not be attending the hearing, which he requested on August 8, 2002, but rather was filing a 42 U.S.C. § 1983 action to prevent the contempt hearing in the United States District Court for the Middle District of Pennsylvania.

The court delayed the Sweeney hearing on the 27th of August for one hour so that Cullen's counsel could confer with him. The Sweeney hearing was then held pursuant to Pennsylvania Rules of Appellate Procedure 1924, 1925, 1926 and 1931, without Cullen. After said hearing, a contempt hearing was held and Cullen was found in contempt and fined $1000.00, which was to be paid within forty-eight hours of the contempt finding.

On August 28, 2002, the court directed the Lackawanna County Sheriff's Department to serve a second letter upon Cullen advising him that he had forty-eight hours from the conclusion of the August 27, 2002[ ] hearing to pay the $1,000.00 contempt fine or the court would proceed with a second contempt hearing on Wednesday[,] August 29, 2002, at 10:30 a.m. The August 27th hearing concluded at 10:20 a.m. and, therefore, Cullen was advised to pay the fine by 10:30 a.m. on August 29, 2002.

On the morning of August 29, 2002, Cullen appeared before [the] court. At that hearing, Cullen stated to the court that he believed he had forty-eight hours from the date he received the contempt order to pay the $1000.00 fine. He also advised the court that he was determining "what made sense to him" and "what did not make sense to him" and that he would review his options for filing a King's Bench Petition with the Pennsylvania Supreme Court. N.T. p. 20.

Finally, on August 29, 2002, at 1:00 p.m., Cullen stated to [the] court that he

will place $1000.00 in "escrow" with the Lackawanna County Clerk of Courts and filed the instant appeal.

Memorandum of Law, 12/31/02, at 1–4 (footnotes omitted).

¶ 3 On appeal, Attorney Cullen essentially argues that the lower court should not have found him in contempt.

 ¶ 4 "As each court is the exclusive judge of contempts against its process, we will reverse an order of contempt only upon a showing of a plain abuse of discretion." *Diamond v. Diamond,* 792 A.2d 597, 600 (Pa.Super.2002) (citation omitted).

 ¶ 5 At the outset, we note that [t]he distinction between criminal and civil contempt is crucial as the due process provided differs significantly. However, there is nothing inherent in a particular contemptuous act that classifies such act as either criminal or civil contempt. Rather, the distinction between the two is the court's dominant purpose in using the contempt power. This [C]ourt has recently explained the difference between the two as follows:

> If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with

the court's order, and in some instances, to compensate the complainant for losses sustained.

*Id.* at 600 (citations omitted).

 ¶ 6 We agree with the lower court that the contempt order in the instant case was civil since its only purpose was to coerce Attorney Cullen into compliance with the court's order to attend the August 27, 2002 hearing.

> ... In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by preponderance of the evidence, that the defendant is in noncompliance with a court order.[1] However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.
>
> To be punished for contempt, a party must not only have violated a court order, but that order must have been *"definite, clear, and specific*-leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose **specific terms** have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act consti-

---

1. Despite Attorney Cullen's argument to the contrary, a court order need not be a formal order which is entered on the docket. *See Matter of James,* 323 Pa.Super. 149, 470 A.2d 174 (1984) (indicating that an over-the-phone agreement to appear in court at a certain time constitutes an "order"); *Com. v. Worthy,* 354 Pa.Super. 454, 512 A.2d 39 (1986) (indicating that judge's direction at trial to continue questioning a witness instead of belaboring points already established constitutes an "order").

tuting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

When holding a person in civil contempt, the court must undertake (1) a rule to show cause; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt....

*Lachat v. Hinchliffe,* 769 A.2d 481, 488–89 (Pa.Super.2001) (citations omitted) (emphasis in original). "Fulfillment of all five factors is not mandated, however." *Wood v. Geisenhemer–Shaulis,* 827 A.2d 1204, 1208 (Pa.Super.2003). "[T]he essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard." *Schnabel Assoc., Inc. v. Bldg. and Const. Trades Council,* 338 Pa.Super. 376, 487 A.2d 1327, 1334 (1985) (emphasis added).

¶ 7 Our review of the certified record in the instant case reveals that court personnel contacted Attorney Cullen by phone and scheduled a hearing for 9:00 a.m. on August 27, 2002. On August 23, 2002, the court received a letter from Attorney Cullen stating that he refused to attend the hearing. The court then hand-delivered a letter to Attorney Cullen informing him that he was to attend the hearing, and if he did not, the court would proceed immediately thereafter with a contempt hearing. On August 27, 2002, Attorney Cullen did not attend the 9:00 a.m. hearing but instead had his counsel, David Rinaldl, Esquire, appear to inquire if the court would proceed with the contempt hearing. The court delayed the contempt hearing for one hour so that Attorney

Rinaldi could confer with him. However, Attorney Cullen never appeared.

¶ 8 As we noted above, each court is the exclusive judge of contempts against its process, and we will reverse an order of contempt only upon a showing of a plain abuse of discretion. *Diamond,* 792 A.2d at 600 (citation omitted). Based upon the above-referenced evidence, we find that the lower court in the instant case did not plainly abuse its discretion in determining that Attorney Cullen had notice of the specific order which he is alleged to have disobeyed, the act constituting Attorney Cullen's violation was volitional, and Attorney Cullen acted with wrongful intent.[2] Moreover, the evidence establishes that Attorney Cullen had notice of the contempt hearing and an opportunity to be heard.

¶ 9 In conclusion, we find that the elements for a finding of civil contempt and the due process requisites have been met. We, therefore, affirm the order of the lower court.

¶ 10 Order affirmed.

---

**2.** Despite Attorney Cullen's argument to the contrary, we find that the lower court had sufficient evidence at the time of the August 27, 2002 contempt hearing to find him in contempt.